UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

NORTHERN FOOD I/E, INC.,

                  Plaintiff,

       v.

OCM GLOBE INC., OCM GROUP USA INC.,
OCM GROUP USA, NJ, INC., GANG WANG,
YAOTIAN LI, and JOHN DOES #1–5,

                Defendants.

----------------------------------------------------------------

**FILED UNDER SEAL**

**MEMORANDUM & ORDER**
21-CV-1813 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Northern Food I/E, Inc. commenced the above-captioned action on April 2,

2021, against Defendants OCM Globe Inc. ("OCM Globe"), OCM Group USA Inc. ("OCM

USA"), OCM Group USA, NJ, Inc. ("OCM NJ") (collectively, the "OCM Entities"), Gang

Wang, Yaotian Li, and John Does #1–5, alleging claims of trademark counterfeiting and

trademark infringement in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114; unfair

competition, false designation of origin, and false description in violation of section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a); and trademark infringement and unfair competition under

New York common law.  (Compl. ¶¶ 40–56, Docket Entry No. 1.)  In their Answer, Defendants

asserted counterclaims for cancellation of Plaintiff's trademark on the grounds of abandonment,

fraud, and lack of right to register.  (Answer 24–32, Docket Entry No. 35.)

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure as to all of Plaintiff's claims and as to Defendants' counterclaims for

cancellation of Plaintiff's trademark on the grounds of abandonment and fraud, and Plaintiff

opposes the motion.[1]  For the reasons discussed below, the Court denies Defendants' motion.

## I.  Background

The following facts are undisputed unless otherwise noted.[2]

### a.  Factual background

#### i.  The parties

Plaintiff is a New York corporation based in Westbury, New York and is in the food

production, importation, and wholesale business.  (Defs.' 56.1 Resp. ¶ 5; Compl. ¶¶ 1, 5.)  It sells

various food products across the United States, including "candy, biscuits, cakes, cookies,

cereal[-]based snack food, wheat[-]based snack food, oatmeals, sesame powder, [and] noodles,"

distributed under the federally registered trademark "Dao Xiang Cun," U.S. Trademark

Registration No. 3,344,149 (the "Dao Xiang Cun Mark").  (Defs.' 56.1 Resp. ¶¶ 5, 17, 23.)  OCM

Globe and OCM USA are two California corporations based in City of Industry, California (the

"California corporations").  (*Id.* ¶ 1.)  OCM NJ is a New Jersey corporation based in Bayonne,

New Jersey.  (*Id.*)  Wang is the chief executive officer ("CEO") of the California corporations.

(*Id.* ¶ 4.)  Li is an employee of the California corporations, and was one of the employees in

charge of communicating with Defendants' foreign manufacturer, DXC Co.[3]  (*Id.* ¶¶ 3, 68, 73.)

---

[1]  (Defs.' Mot. for Summ. J. ("Defs.' Mot."), Docket Entry No. 57; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 57-1; Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 56; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 65.)

[2]  (Defs.' 56.1 Stmt. ("Defs.' 56.1"), Docket Entry No. 57-2; Pl.'s Resp. to Defs.' 56.1 ("Pl.'s 56.1 Resp."), Docket Entry No. 56-1; Defs.' Resp. to Pl.'s 56.1 Resp. ("Defs.' 56.1 Resp."), Docket Entry No. 65-1.)

[3]  The parties disagree about the role and responsibilities of Li.  Defendants assert that Li is an employee "with no decision-making authority," answers to a supervisor who is actually in charge of business operations, and "has no ownership interest in any of the corporate defendants."  (Defs.' 56.1 ¶¶ 68, 71–72.)  Plaintiff disputes that Li has no ownership interest and

### ii.    Plaintiff's application and filings for the Dao Xiang Cun Mark

On July 18, 2006, Plaintiff filed Application Serial No. 78/931,657 (the "Application")

with the U.S. Patent and Trademark Office (the "USPTO") for registration of the Dao Xiang

Mark.  (Defs.' 56.1 Resp. ¶ 15.)  In support of the Application, Plaintiff submitted (1) a sworn

declaration by its V.P. Mark Ma, stating that "he/she believes the applicant to be the owner of the

trademark/service mark sought to be registered," and (2) a photograph of a specimen bearing the

Dao Xiang Cun Mark manufactured by Beidao, a foreign manufacturer located in China that uses

the same mark in connection with its goods outside the United States.  (*Id.* ¶¶ 9–10, 16, 18–20.)

On July 23, 2006, Plaintiff executed an exclusive distribution agreement with Beidao (the

"EDA").  (*Id.* ¶¶ 8, 13.)  The EDA states that it "takes effect after execution" and did not assign

any of Beidao's trademark rights to Plaintiff.[4]  (*Id.* ¶¶ 13–14.)  On November 27, 2007, the

USPTO approved Plaintiff's Application and issued Trademark Registration No. 3,344,149 to

Plaintiff for the Dao Xiang Cun Mark.  (*Id.* ¶ 23.)

---

asserts, on information and belief, that "Li is an important member or a majority owner of [the California corporations], for which he makes decisions and solicits potential employees."  (Pl.'s 56.1 Resp. ¶ 72.)  In addition, Plaintiff disputes that Li had no decision-making authority, citing Li's deposition testimony that he is in charge of "contact[ing] the manufacturers and the selling and purchasing and also contact[ing] the customers" and that approximately ten employees report to him.  (*Id.* ¶¶ 68, 71.)

[4]  The parties dispute the nature of the relationship between Plaintiff and Beidao. Defendants assert that Plaintiff, through the EDA, "distribute[s] Beidao's goods in the [United States]" that bear the Dao Xiang Cun Mark.  (Defs.' 56.1 ¶ 8.)  Plaintiff "disputes that it is a mere distributor of goods belonging to Beidao," and asserts that Plaintiff "produces goods bearing Plaintiff's [Dao Xiang Cun] Mark in concert with manufacturers other than Beidao" and, through the EDA, "co-packs and applies Plaintiff's [Dao Xiang Cun] Mark on goods manufactured by Beidao."  (Pl.'s 56.1 Resp. ¶ 8 (emphasis omitted); *see id.* ¶ 10 ("Plaintiff disputes that Beidao uses the Dao Xiang Cun [M]ark on goods in the United States.  Beidao co-packs and manufacturers in China some of the goods that Plaintiff sells in the United States under Plaintiff's [Dao Xiang Cun] Mark, but Beidao does not own or use the [Dao Xiang Cun] Mark in the United States.").)

On November 28, 2012, Plaintiff filed a "Combined Declaration of Use and Incontestability under Sections 8 [and] 15 of the Lanham Act" for the Dao Xiang Cun Mark, and an accompanying sworn declaration from Qishu Lin, Plaintiff's President, stating that:

> [T]he mark is in use in commerce on or in connection with all of the goods . . . listed in the existing registration for this specific class: candy, biscuits, cakes, cookies, cereal[-]based snack food, wheat[-]based snack food, oatmeals, sesame powder, [and] noodles; and the mark has been continuously used in commerce for five (5) consecutive years after the date of registration . . . , and is still in use in commerce on or in connection with all goods . . . .

(*Id.* ¶¶ 24–26.)  In addition, Plaintiff attached a "specimen in support of its statement of use, which was for sesame cookies."  (*Id.* ¶ 27.)  On December 29, 2012, the USPTO accepted Plaintiff's Combined Declaration of Use and Incontestability.  (*Id.* ¶ 29.)  Accordingly, Plaintiff maintained its registration and obtained incontestability status for the Dao Xiang Cun Mark.  (*Id.*)

On January 3, 2017, Plaintiff filed a "Combined Declaration of Use and Application for Renewal under Sections 8 [and] 9 of the Lanham Act" for the Dao Xiang Cun Mark, an accompanying sworn declaration from Lin that materially stated the same information as Lin's 2012 declaration, and the same specimen for sesame cookies submitted with its 2012 declaration of use.  (*Id.* ¶¶ 30–33.)  On March 2, 2017, the USPTO accepted Plaintiff's Combined Declaration of Use and Application for Renewal, and Plaintiff maintained and renewed its registration for the Dao Xiang Cun Mark.  (*Id.* ¶ 34.)

### iii.  The alleged trademark infringement

Plaintiff alleges that Defendants are "importing [and] distributing products within this judicial [d]istrict using the exact or closely similar mark (the 'Accused Mark') to the Dao Xiang Cun Mark."  (Compl. ¶ 23.)  Plaintiff contends that Defendants (1) sell infringing products bearing the Accused Mark (the "Infringing Products"), (2) maintain and operate an interactive website — www.ocmfoods.com — to promote and advertise their products, including the

Accused Mark and the Infringing Products, (3) have run an advertisement about the Accused

Mark and the Infringing Products in a Chinese language New York newspaper, and (4) circulated

a product catalogue containing the Accused Mark and Infringing Products, both online and

physically in New York, in which Defendants used the registered trademark symbol next to the

Accused Mark even though it is not a registered mark in the United States.  (*Id.* ¶¶ 25–27.)

Plaintiff further contends that between August of 2019 and June of 2021, Defendants' sale of

products branded with the Accused Mark in New York accounted for approximately 12% of the

overall sales of the products branded with the Accused Mark in the United States.  (Decl. of

Gang Wang ¶ 9, annexed to Defs.' Mot. to Dismiss, Docket Entry No. 25-2.)

Plaintiff contends that it has no association with Defendants and has never authorized

them to use the Dao Xiang Cun Mark for any purpose.  (Compl. ¶ 28.)  In a letter dated February

9, 2021, Plaintiff notified Defendants that their use of the Accused Mark infringed Plaintiff's

rights and demanded that Defendants cease and desist use of the Accused Mark.  (*Id.* ¶ 30.)

Defendants refused to cease using the Accused Mark and continue to use it in their operations.

(*Id.* ¶ 31.)

### b.  Procedural history

On April 2, 2021, Plaintiff commenced this action.  (Compl.)  On August 20, 2021, Li

moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(2) of the Federal Rules of Civil

Procedure for lack of personal jurisdiction, and all Defendants moved to dismiss Plaintiff's

claims pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue or,

in the alternative, to transfer venue to the Central District of California pursuant to 28 U.S.C.

§ 1404(a).  (Defs.' Mot. to Dismiss, Docket Entry No. 25.)  On March 28, 2022, the Court denied

Defendants' motion in its entirety (the "March 2022 Decision").  (Mar. 2022 Decision, Docket

Entry No. 33.)

The parties engaged in discovery and completed fact discovery in February of 2023, and expert discovery in March of 2023. (Min. Entry & Order dated Jan. 17, 2023; Order Extending Time to Complete Expert Discovery dated Mar. 21, 2023; *see also* Defs.' Pre-Motion Conf. Letter dated Apr. 17, 2023, at 1, Docket Entry No. 45.) During discovery, Defendant requested that Plaintiff produce "[f]or each good identified in the application or registration for the [Dao Xiang Cun] Mark, documents sufficient to show continuous use of the [Dao Xiang Cun] Mark in connection with each such good." (Defs.' 56.1 Resp. ¶ 37; *see also id.* ¶ 38 (requesting from Plaintiff all documents that Plaintiff "intends to rely upon to show that it has and still uses the [Dao Xiang Cun] Mark in commerce and has not abandoned the [Dao Xiang Cun] Mark").) The parties dispute both Plaintiff's response to this request for production and whether Plaintiff was able to comply with this request.[5] In March of 2022, Plaintiff's counsel confirmed that, for the document requests in dispute, Plaintiff "has produced responsive representative samples to [Defendants'] requests" and "confirm[ed] that it has substantially completed its document production with respect to these [r]equests," but "reserv[ed] its right to supplement its production before the close of the production." (*Id.* ¶ 39 (emphasis omitted).)

On September 1, 2023, after discovery closed, Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on their counterclaims for

---

[5] Defendants assert that Plaintiff's response "identified the following Bates range in . . . its production response: P000513, P000528 to P000693," and that "[t]here are no documents in that Bates range, or in Plaintiff's entire production, that cover the period from April 12, 2007 to December 29, 2017." (Defs.' 56.1 ¶ 37.) Plaintiff disputes Defendants' claim and asserts that it produced documents Bates-stamped P000521 and P000522 showing a product delivered on April 18, 2007. (Pl.'s 56.1 Resp. ¶ 37.) Plaintiff also asserts that it "does not have complete records relating to its sales of goods and its predecessors in interest sales of goods from the last two decades," because it and its predecessors in interest "have moved their warehouse and accompanying office space five times since 1991," and it "changed its accounting software in 2021 because its previous software crashed." (*Id.*) Plaintiff further asserts that "the parties agreed that Plaintiff would produce 'representative samples' of its use of the [Dao Xiang Cun] Mark," not that it would produce representative samples for each year. (*Id.*)

cancellation of Plaintiff's trademark registration on the grounds of abandonment and fraud on the USPTO and on all counts of Plaintiff's Complaint for federal and state law trademark infringement and unfair competition.  (Defs.' Mot. 2.)  Plaintiff opposed the motion and with its opposition, submitted "additional evidence containing more representative samples" of its use of the Dao Xiang Cun Mark ("Plaintiff's Additional Evidence").[6]  (Pl.'s Opp'n; Plaintiff's Additional Evidence.)

## II.  Discussion

### a.  Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)).  The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the

---

[6]  Because many of the pages of additional evidence submitted by Plaintiff are entirely redacted and are not Bates stamped, (*see* Decl. of Qishu Lin ("Lin Decl."), annexed to Pl.'s Opp'n as Ex. 3, Docket Entry No. 56-3), the Court refers to the unredacted and Bates-stamped versions filed by Defendants under seal, (*see* Plaintiff's Additional Evidence, annexed to Decl. of Jen-Feng Lee ("Lee Decl.") as Ex. A, Docket Entry No. 66-3).

[nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (first citing *Anderson*, 477 U.S. at 248; and then citing *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)).

### b. The Court will consider documents not produced during discovery

Plaintiff argues that the Court should consider the additional evidence it submitted with its opposition papers. (Pl.'s Opp'n; Lin Decl.) In support, Plaintiff argues that the parties agreed that Plaintiff would produce only representative samples of use of the Dao Xiang Cun Mark throughout the relevant time period — not "samples for *every year* that [Plaintiff] has been in business." (Pl.'s Opp'n 11–12.) Plaintiff contends it does not have complete records relating to its sales of goods for the last two decades due to frequent office moves and the crash of its accounting system. (*Id.* at 6–7.) In addition, Plaintiff argues that the parties "simply disagreed as to the scope of documents required to be produced under Defendants' [production requests], such that a reasonable person could differ as to whether Plaintiff was required to produce the documents" referenced by Plaintiff's President, who confirmed that "the current use of the [Dao Xiang Cun] Mark [was] indeed representative of the past use of the [Dao Xiang Cun] Mark throughout the decades." (*Id.* at 11–12.) Finally, Plaintiff argues that "Defendants never moved to compel [production of] the requested documents rendering Plaintiff's lack of production during discovery harmless." (*Id.* at 12.)

Defendants argue that, pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, "Plaintiff should be precluded from relying on," and "the Court should not consider," the "nearly a hundred pages of invoices that purport to show use of the [Dao Xiang Cun] Mark during the 2007–

8

2017 abandonment period" submitted by Plaintiff with its opposition to the motion. (Defs.' Reply 3.) In support, Defendants argue that "these documents fall squarely within Defendants' discovery requests," "Plaintiff failed to timely produce them," and Plaintiff's "failure was without justification and prejudicial to Defendants." (*Id.*) Defendants further argue that "Plaintiff should be sanctioned" under the Second Circuit's four *Patterson* factors[7] since: (1) Plaintiff's explanations are without merit because "Plaintiff cannot simply ignore its discovery obligations" nor can "Plaintiff blame Defendants based on a supposed agreement about representative documents"; (2) the submitted invoices are "important to the issue of non[-]use and finding gaps in use"; (3) "the prejudice to Defendants is immense, because they never got the opportunity to test" the submitted documents in discovery and "the documents raise many questions, or are irrelevant, which require exploration"; and (4) "a continuance would not remediate any prejudice to Defendants, as 'the bell cannot be unrung with regard to the time and money devoted by the parties to summary judgment based on the evidentiary record as developed.'" (*Id.* at 3–4 (quoting *Iacovacci v. Brevet Holdings, LLC*, No. 18-CV-8048, 2023 WL 2631966, at *4–5 (S.D.N.Y. Mar. 24, 2023)).)

Under Rule 37 of the Federal Rules of Civil Procedure, if a party fails to provide information or identify witnesses as required by Rule 26(a) or (e), the party may not use that information or witness to "supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Lee v. N. Metro. Found. for Healthcare, Inc.*, No. 21-2155, 2022 WL 17366627, at *4 (2d Cir. Dec. 2, 2022) (quoting Fed. R. Civ. P. 37(c)(1)); *New York v. United Parcel Serv., Inc.*, 942 F.3d 554, 591 (2d Cir. 2019) ("Rule 37(c)(1) provides that a failure to comply with Rule 26(a)'s disclosure obligations results in

---

[7] *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (setting forth the four factors a district court should consider when determining whether to exclude testimony or evidence pursuant to Rule 37 of the Federal Rules of Civil Procedure (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997))).

preclusion of the evidence 'unless the failure was substantially justified or harmless.'" (quoting Fed. R. Civ. P. 37(c)(1))).  Despite the apparently automatic nature of the Rule, district courts have discretion to impose sanctions other than preclusion.  *See* Fed. R. Civ. P. 37(c)(1)(A)–(C); *Brennan-Centrella v. Ritz-Craft Corp.*, 788 F. App'x 799, 803 (2d Cir. 2019) ("A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rules of Civil Procedure 37 . . . ." (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006))); *Sentry Ins. A Mut. Co. v. Weber*, 720 F. App'x 639, 640 (2d Cir. 2017) ("Federal Rule of Civil Procedure 37 gives courts broad discretion to sanction parties who fail to obey discovery orders, [but] . . . [a] sanction 'must be commensurate with the non-compliance.'" (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007))); *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) ("The district court is free to consider the full record in the case in order to select the appropriate sanction." (internal quotation marks and citation omitted)).  Failure to timely produce documents during the discovery period is a violation of discovery rules, subject to sanctions pursuant to Rule 37.  *See Brennan-Centrella*, 788 F. App'x at 803 ("Federal Rule of Civil Procedure 37 permits the court to sanction a party that fails to make the disclosures that Federal Rule of Civil Procedure 26 requires."); *Smith v. Conn. Dep't of Corr.*, 644 F. App'x 1, 2–3 (2d Cir. 2016).  "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence."  *Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (quoting *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)).  However, "preclusion of evidence is a 'harsh remed[y] and should be imposed only in rare situations."  *Clones Inv., LLC v. People's Ins. Co.*, 792 F. App'x 126, 128 (2d Cir. 2020) (alteration in original) (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)); *Vioni v. Providence Inv. Mgmt., LLC*, 750 F. App'x 29, 32 (2d Cir. 2018) (noting that a district court may grant "the extreme sanction of preclusion," but only after

considering the four *Patterson* factors (first quoting *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988); and then citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006))).

The Second Circuit has identified four factors to be considered on a motion to preclude evidence pursuant to Rule 37: (1) the party's explanation for its failure to comply, (2) the importance of the testimony of the precluded witnesses or of the evidence, (3) any prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony or evidence, and (4) the possibility of a continuance. *Design Strategy*, 469 F.3d at 296 (quoting *Patterson*, 440 F.3d at 117); *Clones Inv.*, 792 F. App'x at 128 (quoting *Design Strategy*, 469 F.3d at 296). Bad faith is not required to merit preclusion under the rule but can be taken into account as an explanation for a party's failure to comply with discovery orders. *Design Strategy*, 469 F.3d at 296.

The first factor — Plaintiff's explanation for noncompliance — weighs in favor of excluding Plaintiff's evidence. Plaintiff asserts that (1) it complied with its discovery obligations because the parties agreed that it was only required to produce representative samples of use of the Dao Xiang Cun Mark, which it argues it did and Defendants did not move to compel additional documents, and (2) it did not maintain complete records of the sales of its goods over the last two decades because of office moves and accounting server crashes. While Plaintiff believes it complied with its discovery obligations and claims that it did not maintain documents showing continuous use of the Dao Xiang Cun Mark, its late submission of responsive documents suggests otherwise.

The second factor — importance of the evidence — weighs strongly against excluding Plaintiff's evidence because proof of Plaintiff's continuous use of the Dao Xiang Cun Mark is central to Plaintiff's rebuttal of Defendants' abandonment counterclaim.[8] *Clones Inv.*, 792 F. App'x

---

[8] However, Plaintiff argues that "[e]ven if the Court disregarded the [additional] evidence," there is still "evidence in the current record" that creates a genuine issue of material

at 127–28 (affirming the district court's denial to preclude evidence that was critical to resolving the case); *Design Strategy*, 469 F.3d at 296–97 ("[T]he second *Patterson* factor favors [the plaintiff] because [the plaintiff]'s evidence of lost profits was essential to proving these damages."). *But see Brennan-Centrella*, 788 F. App'x at 803 (noting that the plaintiff's failure to disclose an expert's opinion that "was certainly important to the case" "support[ed] a strong sanction").

The third factor — prejudice to Defendants — weighs slightly in favor of excluding Plaintiff's evidence. Although Plaintiff produced certain documents during discovery, it waited until the briefing of Defendants' summary judgment motion to produce additional documents — documents which Defendants argue "raise many questions" and "require exploration." (Defs.' Reply 4); *cf. Matheson v. Kitchen*, 515 F. App'x 21, 22–24 (2d Cir. 2013) (holding that it was error to disregard the plaintiff's key fact witness testimony even though the witness' information was not fully disclosed because the defendant had notice of the witness more than eighteen months before the summary judgment motion was filed and was presented with the opportunity to take his deposition). However, it appears that Defendants were able to fully review the additional documents since Defendants argue that the additional documents "still fail to create a genuine issue of material fact" because they "fail to bridge the three-year gap of non[-]use sufficient to overcome the presumption of abandonment as to each and every good in the registration." (Defs.' Reply 5 (emphasis omitted).) Although Defendants argue that "many of the documents (1) are in Chinese with no translation and are therefore inadmissible; (2) are irrelevant . . . or (3) make it unclear how they relate to the [Dao Xiang Cun] Mark," Defendants were nevertheless able to create a "graphical illustration" of the additional documents. (*Id.*; Graphical Illustration, annexed to Lee Decl. as Ex. B, Docket Entry No. 65-3.)

---

fact and warrants "deny[ing] Defendants' motion for summary judgement on the issue of trademark abandonment," (Pl.'s Opp'n 12), suggesting that this evidence may not be "critical" or "essential" to Plaintiff's case.

The fourth factor — possibility of a continuance — weighs slightly in favor of excluding Plaintiff's evidence.  Plaintiff submitted its additional evidence nearly six months after fact discovery closed, (*see* Min. Entry & Order dated Jan. 17, 2023 (extending deadline to complete fact discovery to February 16, 2023); Order dated June 16, 2023 (extending Plaintiff's deadline to serve its opposition papers to August 11, 2023)), while summary judgment briefing was ongoing.  Courts in this Circuit have found that disclosure of documents after fact discovery has been closed for months or while summary judgment briefing is ongoing weighs against the possibility of a continuance.  *See, e.g.*, *Hunter v. City of New York*, No. 12-CV-6139, 2019 WL 3752777, at *3 (E.D.N.Y. Aug. 8, 2019) (noting that "the fact that discovery had been closed for three months when [the] defendants disclosed the [d]ocument weighs against the possibility of a continuance," but ultimately declining to exclude the defendants' late disclosure because "exclusion is too harsh a remedy under the circumstances"); *Colon v. Linchip Logistics LLC*, 330 F.R.D. 359, 368 (E.D.N.Y. 2019) ("The closure of discovery weighs strongly against any possibility of a continuance." (first citing *Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alimentari SPA*, No. 08-CV-2540, 2011 WL 1239867, at *4 (E.D.N.Y. Mar. 30, 2011); and then citing *Spotnana, Inc. v. Am. Talent Ag., Inc.*, No. 09-CV-3698, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 7, 2010))); *Downey v. Adloox Inc.*, No. 16-CV-1689, 2018 WL 794592, at *2 (S.D.N.Y. Feb. 8, 2018) (precluding additional witness testimony when "the case ha[d] been pending for over twenty-three months, the parties were granted three extensions of the discovery deadline and had ample time to do whatever they needed to do, and fact discovery ha[d] been closed for almost three months"); *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 308–09 (S.D.N.Y. 2015) (finding that a continuance was not appropriate when the parties were in the middle of a summary judgment briefing schedule and when, at the time the disputed testimony was submitted, "discovery had been closed for nearly a year").  However, other courts

13

in this Circuit have found that when a trial date has not been set, there is a possibility of a continuance and untimely disclosures should not be excluded. *See, e.g.*, *Sokolovic v. CVS Health*, No. 17-CV-6609, 2023 WL 2742148, at \*11 (E.D.N.Y. Mar. 31, 2023) (finding unwarranted the exclusion of an expert's testimony because, although it was "unclear how important [the expert]'s testimony [was] to [the] plaintiff's case, any prejudice to [the] defendants [was] minimal because trial [was] not yet scheduled and defendants may move to reopen discovery"); *Barnett v. Conn. Light & Power Co.*, No. 11-CV-1037, 2013 WL 1196669, at \*2 (D. Conn. Mar. 25, 2013) ("[N]o trial date has been scheduled [and] there is a possibility of continuance. Since continuance is possible, the [d]efendants may move to reopen expert discovery and would have good cause to do so which would mitigate any prejudice suffered by have to prepare to meet [an expert's] new testimony." (third alteration added)). *But see Grabin v. Marymount Manhattan Coll.*, 659 F. App'x 7, 11 (2d Cir. 2016) (affirming the district court's denial of the plaintiff's request to add a "still unspecified medical witness" because, "although a continuance would be possible, as the trial date had already been adjourned, allowing deadlines to continue to slip 'result[s] in the backup of other cases and eventual scheduling chaos as a series of bottlenecks builds'" (alteration in original) (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 962–63 (2d Cir. 1997))).

Weighing all four factors, the Court finds that exclusion of Plaintiff's additional evidence is too "harsh" a sanction. *See Clones Inv.*, 792 F. App'x at 128 (quoting *Update Art*, 843 F.2d at 71). Accordingly, the Court will consider the additional evidence submitted by Plaintiff.[9]

---

[9] To the extent that Defendants believe they need additional discovery based on Plaintiff's newly submitted documents, the Court directs Defendants to show cause, within two weeks of the filing of this Memorandum and Order, why additional discovery is necessary.

### c.   The Court denies summary judgment on Defendants' counterclaims for cancellation on the grounds of abandonment and fraud

Defendants argue that they are entitled to summary judgment on their cancellation counterclaims because Plaintiff abandoned the Dao Xiang Cun Mark, (Defs.' Mem. 6–13), and perpetuated a fraud on the USPTO, (*id.* at 14–22).

Plaintiff argues that Defendants are not entitled to summary judgment on their cancellation counterclaim on the grounds of abandonment because Defendants fail to carry their high evidentiary burden as a matter of law that Plaintiff abandoned the Dao Xiang Cun Mark and Plaintiff has continuously used the Dao Xiang Cun Mark in commerce.  (Pl.'s Opp'n 2–12.)  In addition, Plaintiff argues that Defendants are not entitled to summary judgment on their cancellation counterclaim on the grounds of fraud because Plaintiff did not commit a fraud on the USPTO as it is the rightful owner of the Dao Xiang Cun Mark in the United States and continues to use the Dao Xiang Cun Mark in commerce.  (*Id.* at 12–23.)

### i.   Abandonment of the Dao Xiang Cun Mark

Defendants argue that the Dao Xiang Cun Mark "should be cancelled because the evidence of record indisputably shows that Plaintiff did not use the [Dao Xiang Cun] Mark on any of the goods in its registration for *at least a 10 year period*, if not longer, and thus abandoned the mark." (Defs.' Mem. 6–7.)  In support, Defendants argue that "there is no evidence in the record of sales of any of the registered goods bearing the marks" from April of 2007 to December of 2017.  (*Id.* at 8.)  Defendants argue that "[t]his 10-year period of non[-]use . . . establish[es] prima facie evidence of abandonment," "eliminates Defendants' need to establish the lack of intent to resume use, and shifts the burden to Plaintiff to come forward with evidence that it intended to resume use of the mark within a reasonably foreseeable time." (*Id.* (citing *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147–48 (2d Cir. 2007)).)  In addition, Defendants argue that Plaintiff "cannot

rebut a presumption of abandonment merely by asserting a subjective intent to resume use of the mark at some later date," (*id.* at 12), and has presented "no evidence whatsoever concerning an intent to resume use to rebut the presumption of abandonment," (Defs.' Reply 1 (emphasis omitted)).  Defendants also argue that, even if the Court were to consider Plaintiff's additional evidence, this evidence "fail[s] to bridge the three-year gap of non[-]use sufficient to overcome the presumption of abandonment as to each and every good in the registration."  (*Id.* at 5.) Finally, Defendants argue that "the substantial evidence of Plaintiff's use of a *completely different and unrelated mark* on the goods in the registration" further indicates that Plaintiff abandoned the Dao Xiang Cun Mark.  (Defs.' Mem. 9.)

Plaintiff argues that it did not abandon the Dao Xiang Cun Mark because the Dao Xiang Cun Mark has been in continuous use in U.S. commerce from 2007 to present, and also argues that "Defendants fail to carry their high evidentiary burden as a matter of law."  (Pl.'s Opp'n 2.) In support, Plaintiff argues that Defendants have not produced evidence to satisfy the two elements of abandonment — non-use and no intent to resume use of the Dao Xiang Cun Mark. (*Id.* at 4.)  Plaintiff argues that, although "non-use of a trademark for three consecutive years constitutes prima facie evidence of abandonment," Defendants fail to establish, by clear and convincing evidence, Plaintiff's non-use of the Dao Xiang Cun Mark for at least three consecutive years because they rely on "(1) self-serving, conclusory allegations that the [Dao Xiang Cun] Mark was not in use; and (2) the fact that [Plaintiff] uses the HAVISTA trademark on similar goods."  (*Id.* at 4–10.)  In addition, Plaintiff argues that "[e]ven if Defendants could demonstrate with clear and convincing evidence abandonment of the [Dao Xiang Cun] Mark between 2007–2017," Plaintiff successfully rebutted abandonment as evidenced by "several invoices for [Dao Xiang Cun] branded goods between 2007–2017, along with images of its products" concurrently submitted with Plaintiff's summary judgment opposition papers.  (*Id.* at 10–12.)

16

"The abandonment doctrine derives from the well-established principle that trademark rights are acquired and maintained through use of a particular mark." *ITC Ltd.*, 482 F.3d at 146 (citing *Pirone v. MacMillian, Inc.*, 894 F.2d 579, 581 (2d Cir. 1990)). "[A]bandonment is not only an affirmative defense to an infringement action; it is a ground for cancelling a federally registered mark." *Id.* (citing 15 U.S.C. § 1064(3)). Under the Lanham Act, the owner of a trademark abandons its rights in a mark when its use of the mark "has been discontinued with intent not to resume such use" or when its conduct causes the mark to become "generic." 15 U.S.C. § 1127; *Cross Comm. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 169 (2d Cir. 2016) ("To determine that a trademark or trade name is abandoned, two elements must be satisfied: non-use of the name by the legal owner and no intent by that person or entity to resume use in the reasonably foreseeable future." (quoting *Stetson v. Howard D. Wolf & Assocs.*, 955 F.2d 847, 850 (2d Cir. 1992))). "The party asserting abandonment bears the burden of persuasion." *ITC Ltd.*, 482 F.3d at 147; *GMA Accessories, Inc. v. New Six Ltd.*, No. 21-CV-11227, 2023 WL 6259381, at *9 (S.D.N.Y. Sept. 26, 2023) (quoting *ITC Ltd.*, 482 F.3d at 147). Courts in this Circuit have required abandonment to be proven by clear and convincing evidence. *Beata Music LLC v. Danelli*, No. 18-CV-6354, 2022 WL 61862, at *7 (S.D.N.Y. Jan. 6, 2022) ("The party asserting abandonment bears the ultimate burden of proving abandonment by clear and convincing evidence." (citing *Pado, Inc. v. SG Trademark Holding Co., LLC*, 527 F. Supp. 3d 332, 341 (E.D.N.Y. 2021))); *Pado*, 527 F. Supp. 3d at 341 (first quoting *Empresa Cubana Del Tabaco v. Culbro Corp.*, 213 F. Supp. 2d 247, 268 (S.D.N.Y. 2002); then citing *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 574 (S.D.N.Y. 2013); and then citing 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 17:12 (5th ed. 2021)). "Once abandoned, a mark returns to the public domain" and may be appropriate for others to use. *ITC Ltd.*, 482 F.3d at 147; *see also GMA Accessories*, 2023 WL 6259381, at *9 ("'Once abandoned,'

a trademark 'returns to the public domain' and may be used by persons other than the owner." (quoting *ITC Ltd.*, 482 F.3d at 147)).

"Use" of a trademark means application of the mark "sufficient to maintain 'the public's identification of the mark with the proprietor,'" *Stetson*, 955 F.2d at 851 (quoting *Silverman v. CBS, Inc.*, 870 F.2d 40, 48 (2d Cir. 1989)), which requires "bona fide use of [the] mark in the ordinary course of trade, and not made merely to reserve a right in a mark," 15 U.S.C. § 1127; *see also Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 418 (2d Cir. 2018) ("To prove bona fide usage, the proponent of a trademark must demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual or transitory." (quoting *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271–72 (2d Cir. 1974))).  "[A] court must look to the trademark holder's occupation or business to determine what constitutes use of the mark." *Stetson*, 955 F.2d at 851.  "The Lanham Act expressly states that '[n]onuse' of a mark 'for 3 consecutive years shall be prima facie evidence of abandonment,'" *ITC Ltd.*, 482 F.3d at 149 (quoting 15 U.S.C. § 1127), which means "a rebuttable presumption of abandonment," *id.* (first quoting *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); and then citing *Silverman*, 870 F.2d at 45).

Once an alleged infringer establishes prima facie evidence of abandonment, the trademark owner is required "to come forward only with such contrary evidence as, when viewed in the light most favorable to [the trademark owner], would permit a reasonable jury to infer that it had not abandoned the mark." *ITC Ltd.*, 482 F.3d at 149.  The trademark owner must "adduce sufficient evidence to permit a reasonably jury to conclude that, in the three-year period of non-use," it "nevertheless maintained an intent to resume use of its registered mark in the reasonably foreseeable future." *Id.* (first citing *Silverman*, 870 F.2d at 47; and then citing *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 467 n.2 (2d Cir. 2005)).  "The

18

ultimate burden of persuasion on the issue of abandonment," therefore, "remains at all times with the alleged infringer." *Id.* at 148. "[A]bandonment, being a forfeiture of a property interest, should be strictly proved." *Saratoga Vichy Spring Co.*, 625 F.2d at 1044.

Defendants have not established by clear and convincing evidence that Plaintiff abandoned its mark through non-use. Plaintiff has produced evidence that it used the Dao Xiang Cun Mark continuously in commerce during the relevant time period.[10] (*See generally* Plaintiff's Additional Evidence; Graphical Illustration.) Although Plaintiff did not provide documentary evidence that it used the Dao Xiang Cun Mark in commerce from May of 2011 to October of 2013 for any of the goods covered by the Dao Xiang Cun Mark,[11] this thirty-month period does not trigger the statutory presumption of non-use since it is less than three years. *See* 15 U.S.C. § 1127; *Rosenshine v. A. Meshi Cosms. Indus. Ltd.*, No. 18-CV-3572, 2023 WL 6516994, at *4 (E.D.N.Y. Oct. 4, 2023) (finding no abandonment because a thirteen-month period of non-use does not trigger the statutory presumption); *Faram 1957 S.P.A. v. Faram Holding & Furniture, Inc.*, No. 16-CV-2430, 2018 WL 1394178, at *15 (S.D.N.Y. Mar. 19, 2018) (finding no abandonment when "[t]he period between August 2014 and October 2016 [was] less than three years, and thus the rebuttable presumption [of non-use did] not apply");

---

[10] For example, Plaintiff produced an invoice in 2007, (*see* Plaintiff's Additional Evidence T0041 (invoice for cookies dated May 29, 2007)), in 2008, (*id.* at T0002 (invoice for candy dated Jan. 18, 2008)), in 2009, (*id.* at T0094 (invoice for noodles dated Sept. 22, 2009)), in 2010, (*id.* at T0018 (invoice for candy dated July 8, 2010)), in 2011, (*id.* at T0050 (invoice for cereal-based snack foods dated Apr. 25, 2011)), in 2013, (*id.* at T0081 (invoice for sesame powder dated Nov. 3, 2013)), in 2014, (*id.* at T0084 (invoice for sesame powder dated Mar. 25, 2014)), in 2015, (*id.* at T0065 (invoice for oatmeal dated June 3, 2015)), in 2016, (*id.* at T0057 (invoice for wheat-based snack foods dated Apr. 1, 2016)), in 2018, (P000607, annexed to Decl. of Eric Huang ("Huang Decl.") as Ex. U, Docket Entry No. 64-5 (invoice for noodles dated Nov. 5, 2018)).

[11] Plaintiff produced an invoice for candy and an invoice for cereal-based snack foods both dated April 25, 2011, (*see* Plaintiff's Additional Evidence T0016 (candy); *id.* at T0051 (cereal-based snack food)), and an invoice for sesame powder dated November 3, 2013, (*see id.* at T0081).

*Total Control Apparel, Inc. v. DMD Int'l Imps., LLC*, 409 F. Supp. 2d 403, 410 (S.D.N.Y. 2006) (finding no abandonment when the non-use was less than "the three years necessary to establish prima facie abandonment").  In addition, Plaintiff explains that it produced representative samples of use of the Dao Xiang Cun Mark because it did not maintain complete records of sales due to frequent office moves and the crash of its accounting system, (Lin Decl. ¶ 37), and Plaintiff's President Lin swore that Plaintiff's use has been continuous since 1996, (*id.* ¶¶ 6, 7, 33); *see Farah v. Pramil S.R.L.*, 300 F. App'x 915, 919 (Fed. Cir. 2008) (affirming the Trademark Trial and Appeal Board's finding that the plaintiff did not abandon its mark when its witness "(1) explained the four-year evidentiary gap (specifically, he testified that the invoices represented merely a random sampling over the course of ten years), and (2) testified that [the plaintiff]'s use of the mark ha[d] been continuous since 1994, with no interruption or cessation").

The Court is not persuaded by Defendants' argument that the additional evidence submitted by Plaintiff "fail[s] to bridge the three-year gap of non[-]use sufficient to overcome the presumption of abandonment as to each and every good in the registration."  (Defs.' Reply 5.) Defendants do not cite any caselaw requiring Plaintiff to show continuous use of every good — rather than continuous use of the Dao Xiang Cun Mark — throughout the relevant time period. *See* 15 U.S.C. § 1127 ("[A] mark shall be deemed to be used in commerce . . . on goods when — (A) it is placed in any manner on the goods or their containers . . . , and (B) the goods are sold or transported in commerce."); *ITC Ltd.*, 482 F.3d at 147 (requiring an alleged infringer to establish "non-use of the mark by the legal owner").  Because Defendants fail to show non-use of the Dao Xiang Cun Mark for a consecutive three-year period sufficient to trigger the statutory presumption and fail to show by clear and convincing evidence that Plaintiff otherwise abandoned the Dao Xiang Cun Mark, the Court denies summary judgment as to Defendants' counterclaim for cancellation of Plaintiff's trademark registration on the grounds of abandonment.

20

### ii.    Fraud on the USPTO

Defendants argue that the Dao Xiang Cun Mark should be cancelled for "Plaintiff's fraud in obtaining and maintaining its registration, by submitting multiple knowingly false statements to the USPTO with the intent to deceive." (Defs.' Mem. 14.)  First, Defendants argue that in obtaining its trademark, Plaintiff fraudulently registered the Dao Xiang Cun Mark by falsely representing that it owned the mark when it was only a U.S. distributor of goods bearing the foreign manufacturer's mark and had no rights to the foreign manufacturer's mark pursuant to the EDA between Plaintiff and the foreign manufacturer. (*Id.* at 18.)  Second, Defendants argue that, "as [a] mere distributor of the manufacturer's goods, Plaintiff was required to submit written evidence to USPTO that it owned the mark to obtain registration," which Plaintiff did not submit. (*Id.* at 19.)  Third, Defendants argue that Plaintiff's argument that Defendants do not have standing to challenge Plaintiff's trademark ownership as between Plaintiff and the foreign manufacturer Beidao is without merit because Defendants are arguing that Plaintiff had no rights in the Dao Xiang Cun Mark as of the filing date of the Application, not that Beidao has superior rights to the Dao Xiang Cun Mark in the United States over Plaintiff. (Defs.' Reply 7–8.)  Fourth, Defendants argue that Plaintiff made multiple false statements in its 2012 and 2017 declarations of use, incontestability, and renewal, with the intent to deceive, by stating that the mark was (1) "in use in commerce on or in connection with all of the goods" listed in the registration and (2) "continuously used in commerce for five (5) consecutive years after the date of registration" because "the record evidence is devoid of any evidence of use from 2007–2017, if not longer, establishing the statement's falsity." (Defs.' Mem. 15–16.)  Fifth, Defendants argue that "Plaintiff's knowledge that it was not using the [Dao Xiang Cun] Mark in commerce and not the rightful owner is clear from the fact that it was using the unrelated Havista Mark on its goods, as seen on Plaintiff's website, catalog, and Plaintiff's product offerings online and in

21

retail stores." (*Id.* at 16–17.)  Finally, Defendants argue that Lin, Plaintiff's President, has engaged in a pattern of fraudulently filing U.S. trademark applications on trademarks well known in China, which is highly probative of the issue of intent and knowledge, pursuant to Rule 404(b) of the Federal Rules of Evidence.  (*Id.* at 21–22.)

Plaintiff argues that it did not commit a fraud on the USPTO in obtaining or maintaining its trademark registration.  (Pl.'s Opp'n 12–23.)  First, Plaintiff argues that it uses the Dao Xiang Cun Mark in connection with the goods identified in its registration, as demonstrated by the additional evidence Plaintiff submitted.  (*Id.* at 12–13.)  Second, Plaintiff argues that Defendants do not have standing to challenge Plaintiff's ownership of the Dao Xiang Cun Mark under *Haggar Int'l Corp. v. United Co. for Food Industry Corp.*, 906 F. Supp. 2d 96 (E.D.N.Y. 2012), because a third-party cannot challenge ownership as between a manufacturer and a distributor. (*Id.* at 14–16.)  In support, Plaintiff argues that, since "there is no dispute between Plaintiff and Beidao, and Beidao has never contested Plaintiff's ownership of the [Dao Xiang Cun] Mark in the United States," *Haggar* "does not provide Defendants with standing to assert the purported prior rights of Beidao" and Defendants have not "produce[d] any evidence suggesting [that] Beidao has superior rights in the [Dao Xiang Cun] Mark *in the United States*," nor have Defendants "produce[d] any evidence suggesting Plaintiff knew of Beidao's purported rights *in the United States* and knowingly made false statements with the intent to deceive the USPTO." (*Id.* at 14–15.)  Finally, Plaintiff argues that, even if Defendants had standing, Plaintiff is "the rightful owner of the [Dao Xiang Cun] Mark in the United States" because (i) "Plaintiff manufactures goods bearing the [Dao Xiang Cun] Mark in its own factory in the United States," as evidenced by President Lin's deposition testimony, and (ii) "Plaintiff is not a mere distributor of goods bearing the [Dao Xiang Cun] Mark" under the *Wrist-Rocket* test analyzed in *Haggar*. (*Id.* at 13–14, 16–23.)

A party fraudulently obtains a trademark registration when it "knowingly makes false, material representations of fact in connection with [its] application" with the intent to deceive the USPTO.  *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658, 660 (2d Cir. 2016) (citing *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009)); *see also Bose*, 580 F.3d at 1245 ("[A] trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the [US]PTO."); *Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988) (noting that a plaintiff seeking cancellation of a trademark on the grounds of fraud must point to a "knowing misstatement . . . with respect to a material fact" that "indicate[s] a 'deliberate attempt to mislead the [USPTO]'" (emphasis and citations omitted)).  A material representation is "one that would have affected the [US]PTO's action on the application[]."  *Orient Express*, 842 F.2d at 653; *CSL Silicones, Inc. v. Midsun Grp. Inc.*, 301 F. Supp. 3d 328, 353 (D. Conn. 2018) ("To rise to the level of fraud, the false statement must be made knowingly and have been material to the [US]PTO's decision to grant [the] trademark application." (second alteration in original) (quoting *Haggar*, 906 F. Supp. 2d at 127)).  "A party seeking cancellation of a registered trademark on grounds of fraud must demonstrate the alleged fraud by 'clear and convincing evidence.'"  *MPC Franchise*, 826 F.3d at 658 (quoting *Orient Express*, 842 F.2d at 653); *Bose*, 580 F.3d at 1243 ("[T]he very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence.  There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 U.S.P.Q. 1033, 1044 (T.T.A.B. 1981))).

"The disclosure of the identity of a person or entity that has superior rights in the mark, including another entity that first used the mark, is material to the [US]PTO's determination, and, if misrepresented, may support a finding of fraud."  *World Trade Ctrs. Assoc'n, Inc. v. Port Auth.*

23

*of N.Y. & N.J.*, No. 15-CV-7411, 2018 WL 6628840, at *17 (S.D.N.Y. Dec. 18, 2018) (citing

*MPC Franchise, LLC v. Tarntino*, 19 F. Supp. 3d 456, 478–79 (W.D.N.Y. 2014), *aff'd*, 826 F.3d

653).  However, "[c]ommercial 'use of a mark overseas cannot form the basis for a holding of

priority trademark use' in the United States," *Haggar*, 906 F. Supp. 2d at 109 (quoting *De Beers*

*LV Trademark Ltd. v. DeBeers Diamond Syndicate*, 440 F. Supp. 2d 249, 269 (S.D.N.Y. 2006)),

and "[p]rior use of a trademark in a foreign country does not entitle its owner to claim exclusive

trademark rights in the United States as against one who used a similar trademark in the [United

States] prior to entry of the foreigner into the domestic American market," *id.* (quoting 2 J.

Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 29:01[3] (4th ed.

2010)).  "This rule applies with equal force to protect a company that outright copies a mark that

has been previously used abroad but that is not famous in the United States, uses the copied mark

on goods sold in the United States, and then claims to have priority in the mark in the United

States over the foreign originator."  *Id.* (citing 2 McCarthy, § 29.01[3]).

   If a court finds that a trademark registration was obtained or maintained through fraud,

the court must cancel the fraudulently obtained registration pursuant to Section 14 of the Lanham

Act.  15 U.S.C. § 1064(3); *Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333, 1338–39 (Fed.

Cir. 2024) ("[F]raud in connection with maintaining a registration is actionable in a Section 14

cancellation proceeding." (citing *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir.

1986))).  However, "[o]rdinarily, the issue of fraudulent intent cannot be resolved on a motion

for summary judgment, being a factual question involving the parties' state of mind."  *Golden*

*Budha Corp. v. Canadian Land Co. of Am.*, 931 F.2d 196, 201–02 (2d Cir. 1991); *see also*

*S.A.R.L. Galerie Enrico Navarra v. Marlborough*, 751 F. App'x 39, 40 (2d Cir. 2018) ("[W]here

facts raising a question of intent are shown, 'summary judgment is generally inappropriate,'

because 'intent is always a subjective matter of inference.'" (first quoting *Gelb v. Bd. of*

24

*Elections*, 224 F.3d 149, 157 (2d Cir. 2000); and then quoting *ITC Ltd.*, 482 F.3d at 150)); *ITC Ltd.*, 482 F.3d at 150 ("[I]ntent is always a subjective matter of inference and thus rarely amenable to summary judgment." (quoting *Saratoga Vichy Spring Co.*, 625 F.2d at 1044)).

### 1. Defendants fail to show that Plaintiff obtained the Dao Xiang Cun Mark through fraud

Defendants have not shown by clear and convincing evidence that Plaintiff obtained its trademark registration through fraud. Although Defendants argue that Plaintiff falsely represented that it owned the Dao Xiang Cun Mark when it was merely a U.S. distributor of goods bearing the foreign manufacturer Beidao's mark and had no contractual rights to Beidao's mark,[12] there exists a genuine dispute as to whether Plaintiff was merely a U.S. distributor of Beidao's goods. *See Haggar*, 906 F. Supp. 2d at 110–11 ("[T]he law is clear that where two companies operate within a manufacturer-distributor arrangement, the 'exclusive U.S. distributor does not acquire ownership of a foreign manufacturer's mark any more than a wholesaler can acquire ownership of an American manufacturer's mark, merely through the sale and distribution of goods bearing the manufacturer's trademark.'" (quoting 2 McCarthy, § 29.02)).

---

[12] The Court does not understand Defendants to be raising a *jus tertii* defense, *i.e.*, a claim by a defendant that a third party has rights in the mark superior to a plaintiff. *See Diarama Trading Co., Inc. v. J. Walter Thompson U.S.A., Inc.*, No. 01-CV-2950, 2005 WL 2148925, at *6 (S.D.N.Y. Sept. 6, 2005) ("Defendants are essentially raising the *jus tertii* defense to trademark infringement; that is, they are relying on the allegedly superior trademark rights of third party to establish their own priority of use over [the plaintiff]'s rights in the [trade]mark."); *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 909 (E.D.N.Y. 1988) ("In the context of a trademark infringement suit, 'a claim by [a] defendant that a third party has rights in the mark superior to [a] plaintiff is . . . a *jus tertii* defense.'" (quoting 2 J. McCarthy, *Trademarks and Unfair Competition*, § 31:39 (2d ed. 1984))).). Rather, the Court understands Defendants to be arguing that Plaintiff had no rights in the Dao Xiang Cun Mark as of the filing date of the Application, not that the foreign manufacturer Beidao has superior rights to the Dao Xiang Cun Mark in the United States over Plaintiff. (*See* Defs.' Reply 7–8.) Thus, the Court does not address Plaintiff's arguments regarding Defendants' alleged *jus tertii* defense.

25

For example, Plaintiff proffers evidence that it manufactures its own products and has manufactured its own products since it filed the Application with the USPTO, in addition to receiving products manufactured by others, including Beidao.[13]  (*See* Dep. of Qishu Lin 60:21–61:24, annexed to Decl. of Ge Li as Ex. 1, Docket Entry No. 56-2.)  Plaintiff further proffers evidence that it was the first to use the trademark in the United States for its products, (*see id.* at 40:1–4, 151:19–152:4), and Plaintiff's V.P. swore that "he/she believes the applicant to be the owner of the trademark/service mark sought to be registered" and "to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce," (Defs.' 56.1 Resp. ¶ 19); *see Haggar*, 906 F. Supp. 2d at 107–08 ("In determining whether an applicant, when he signed his application oath, held an honest, good faith belief that he was entitled to registration of his mark, the [Trademark Trial and Appeal Board] has stated that if the other person's rights in the mark, vis-à-vis the applicant's rights, are not known by applicant to be superior or clearly established, *e.g.*, by court decree or prior agreement of the parties, then the applicant has a reasonable basis for believing that no one else has the right to use the mark in commerce, and that applicant's averment of that reasonable belief in its application declaration or oath is not fraudulent." (quoting *Maids to Order of Ohio, Inc. v. Maid-to-Order, Inc.*, 78 U.S.P.Q.2d 1899, 1908 (T.T.A.B. 2006)))  Because Plaintiff believed it

---

[13]  Defendants argue that first, "the record is devoid of any evidence that Plaintiff sold any goods bearing the mark *other than* on the manufacturer's goods as of the [f]iling [d]ate," (Defs.' Mem. 19–20), second, "Plaintiff did not provide its own products for Beidao to make," (*id.* at 20), and third, "Plaintiff's deposition testimony about having a manufacturing facility in the [United States] prior to the [f]iling [d]ate says nothing about whether that facility (1) produced the goods identified in the registration (2) bearing the [Dao Xiang Cun] Mark (3) that were sold in commerce (4) as of the [f]iling [d]ate," (Defs.' Reply 8).  It is Defendants' burden to prove fraud and requiring Plaintiff to produce such evidence impermissibly shifts the burden to Plaintiff.  *See, e.g.*, *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016); *River Light V, L.P. v. Olem Shoe Corp.*, No. 20-CV-7088, 2022 WL 4484575, at *11 (S.D.N.Y. Sept. 27, 2022) (granting the plaintiffs' motion for summary judgment on the defendant's fraud counterclaim because the defendant "attempt[ed] to shift the burden of proof onto [the p]laintiffs").

was the first to use the Dao Xiang Cun Mark in the United States and thus believed it was the owner of the trademark at the time of filing the Application, the fact that Plaintiff and Beidao entered into the EDA shortly thereafter and that the EDA does not assign any trademark rights to Plaintiff is not determinative of whether Plaintiff committed a fraud on the USPTO in filing its Application.  *See Haggar*, 906 F. Supp. 2d at 109 (stating that an applicant has a reasonable basis for believing "no one else has the right to use the mark in commerce" unless the right is known to be "superior or clearly established, *e.g.* by court decree or prior agreement of the parties" (quoting *Maids to Order of Ohio, Inc.*, 78 U.S.P.Q.2d at 1908)); *cf. Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo "Spartak"*, No. 13-CV-2303, 2016 WL 4532113, at *8 (E.D.N.Y. Aug. 29, 2016) (granting summary judgment in favor of the defendants because the exclusive distribution agreement between the parties, executed before the plaintiffs filed for trademark registration, defined the plaintiff's role solely as that of an exclusive distributor, and retained in the defendants the sole rights to any and all trademarks and trade names).

The Court declines to consider Defendants' argument that the evidence shows that Plaintiff, through Plaintiff's President Lin, engaged in a "pattern of conduct of fraudulently filing U.S. trademark applications on trademarks well known in China" as evidence of Plaintiff's intent and knowledge in this case.  (Defs.' Mem. 21; *see also* Pl.'s Opp'n 22 n.2 ("Plaintiff strongly disputes that it has ever knowingly tried to deceive the USPTO, a fact which is very much in dispute . . . .").)  Although Defendants cite caselaw to support the proposition that the Court can consider instances of testimony or prior conduct of alleged fraud in determining the issue of intent and knowledge, (*see* Defs.' Mem. 21 (citing *Tuccillo v. Geisha NYC, LLC*, 635 F. Supp. 2d 227, 236 n.4 (E.D.N.Y. 2009))), these cases are distinguishable because they either involve inconsistent testimony in the case at issue or a related litigation, *see Tuccillo*, 635 F. Supp. 2d at 236 n.4 (considering the plaintiff's testimony at the preliminary injunction hearing and his

deposition testimony in a related litigation in the Northern District of Illinois as "highly probative for impeachment purposes, as well as on the issue of intent and knowledge"), or a history of trademark infringement actions filed against a party, *see Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (considering the fact that the defendants had been sued in trademark infringement cases in the past on the issue of willfulness in a trademark suit); *Johnson & Johnson Consumer Cos., Inc. v. Aini*, 540 F. Supp. 2d 374, 392 n.31 (E.D.N.Y. 2008) (finding admissible as evidence of intent and knowledge under Rule 404(b) a defendant's history of trademark infringement actions against it). The Court declines to consider evidence of alleged fraud in four unrelated trademark applications for which no trademark infringement actions or cancellation proceedings have been initiated.[14]

Because there is a genuine issue of material fact as to whether Plaintiff was merely the U.S. distributor of Beidao's goods and Plaintiff proffers evidence that, at the time it filed the Application, it partially manufactured its own goods bearing the Dao Xiang Cun Mark and believed it owned the Dao Xiang Cun Mark in the United States, Defendants have not established by clear and convincing evidence that Plaintiff obtained its trademark registration through knowingly false statements of material fact.

### 2. Defendants fail to show that Plaintiff maintained the Dao Xiang Cun Mark through fraud

Defendants also fail to show by clear and convincing evidence that Plaintiff maintained its trademark registration by making knowingly false and misleading statements of material facts in the declarations of use it submitted to the USPTO in 2012 and 2017. Although Defendants argue that Plaintiff made false statements in its declarations regarding the continuous use of the Dao

---

[14] The Court notes that the fourth allegedly fraudulent application referenced by Defendants was denied by the USPTO not for fraud but for being "generic." (Defs.' Mem. 21–22.)

Xiang Cun Mark in connection with all goods listed in the registration because the record is devoid of any evidence of use from 2007 to 2017, (Defs.' Mem. 15–16), Plaintiff submitted evidence that the Dao Xiang Cun Mark was used continuously in commerce during the relevant time period,[15] (*see supra* section II.c.i).

Moreover, Plaintiff's use of a separate registered trademark — the Havista Mark — on its goods, website, and catalog does not give rise to an inference that Plaintiff was not using and knew that it was not using the Dao Xiang Cun Mark in commerce or that it was not the rightful owner.  (*See* Defs.' Mem. 16–17.)  Plaintiff's use of the Havista Mark therefore does not render Plaintiff's 2012 and 2017 declarations regarding the use of the Dao Xiang Cun Mark knowingly false.  Although deceptive intent "can be inferred from indirect and circumstantial evidence," *see Bose*, 580 F.3d at 1245, Plaintiff proffers evidence that it "has not replaced the [Dao Xiang Cun] Mark with the Havista Mark on its goods in U.S. commerce and does not use the Havista Mark to the exclusion of the [Dao Xiang Cun] Mark," but rather uses both marks in U.S. commerce and

---

[15] Even if the Court were to find that Plaintiff had not proffered evidence of continuous use, Defendants have failed to show, by clear and convincing evidence, that Plaintiff's allegedly fraudulent statements "indicated a deliberate attempt to mislead the [USPTO]."  *See MPC Franchise*, 826 F.3d at 659 (noting that allegedly fraudulent statements "must be 'knowing misstatement[s]' of material fact that 'indicate a deliberate attempt to mislead the [USPTO]'" (first alteration in original) (quoting *Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988))); *In re Bose Corp.*, 580 F.3d 1240, 1246 (Fed. Cir. 2009) (finding that the defendant's general counsel "testified under oath that he believed the statement was true at the time he signed the renewal application" and unless "the challenger can point to evidence to support an inference of deceptive intent, it has failed to satisfy the clear and convincing evidence standard required to establish a fraud claim"); *Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286, 312–13 (S.D.N.Y. 2000) (finding that, although there was clear and convincing evidence that the plaintiff's 1992 "statements of continuous and current use in interstate commerce were false" because "[a] single license and a handful of advertisements [from 1989 to 1992 did] not constitute continuous use" and there was "no evidence that [the plaintiff] was using the [mark] in interstate commerce during 1992," the defendants had not shown by clear and convincing evidence that "the submission with respect to the [mark] was knowingly false").

has used both marks on the same product,[16] (Lin Decl. ¶ 10), and explains that Plaintiff's

"primary channel of trade is distribution to grocery retailers, rather than a direct-to-consumer

distribution model," meaning Plaintiff's "product catalogs and website are not representative of

each and every good [Plaintiff] offers," (*id.* ¶ 36).  *See Tommy's Supplies LLC v. Papillon Ink*

*LLC*, No. 16-CV-1922, 2020 WL 1532367, at *6 (D. Conn. Mar. 31, 2020) (declining to grant

summary judgment in favor of either party because the plaintiff "provided a number of good faith

explanations for its conduct," but "[i]f a jury reject[ed] the good faith explanations, a sufficient

basis would exist for a jury to conclude that [the plaintiff] acted with fraudulent intent").

 Thus, Defendants have not established by clear and convincing evidence that Plaintiff

maintained its trademark registration by making false and misleading statements of material facts

to the USPTO.  Accordingly, the Court denies summary judgment as to Defendants'

counterclaim for cancellation of Plaintiff's trademark registration on the grounds of fraud.

### d.   The Court denies Defendants' motion for summary judgment as to all of Plaintiff's claims

 Defendants also move for summary judgment as to all of Plaintiff's claims — trademark

counterfeiting, trademark infringement, unfair competition, common law trademark

infringement, and common law unfair competition — based on the anticipated cancellation of the

Dao Xiang Cun Mark for abandonment or fraud.  (Defs.' Mem. 13–14.)  In the alternative,

Defendants argue that the Court should grant their motion for summary judgment as to Plaintiff's

trademark counterfeiting claim because the Accused Mark is not "identical with, or substantially

indistinguishable from" the Dao Xiang Cun Mark.  (*Id.* at 22 n.8 (quoting 15 U.S.C. § 1127).)

---

[16]   Although Plaintiff submits images bearing both the Dao Xiang Cun and Havista Marks, the Court declines to weigh this evidence as the displayed products are not covered by Plaintiff's Dao Xiang Cun trademark registration.  (*See* Excerpt of Plaintiff's Product Catalog, annexed to Lin Decl. as Ex. 0, Docket Entry No. 56-3 (displaying product images of raw sugar, cane sugar, corn grits, and corn flour).)

i.   **Plaintiff's trademark counterfeiting, trademark infringement, unfair competition, common law trademark infringement, and common law unfair competition claims**

Defendants argue that, if the registration for the Dao Xiang Cun Mark is cancelled as abandoned or for fraud, "Defendants are entitled to summary judgment . . . for counterfeiting and trademark infringement under the Lanham Act, which require a 'registered mark' as an essential element." (Defs.' Mem. 13 (citation omitted).)  As to Plaintiff's unfair competition, common law trademark infringement, and common law unfair competition claims, Defendants argue that "Plaintiff may assert these claims only to the extent it can establish common law rights in the [Dao Xiang Cun] Mark through resumption of use" or "use for the first time[] after abandonment," which Defendants argue Plaintiff cannot establish.  (*Id.* at 13.)  Defendants further argue that, "to the extent that Plaintiff attempts to show any new common law rights in the [Dao Xiang Cun] Mark after abandonment, such rights were predated by [Defendant]'s prior use of the mark," and thus, Defendants argue that they "do not infringe any common law rights that Plaintiff may have."[17]  (*Id.* at 13–14.)

The Court denies Defendants' motion for summary judgment as to all of Plaintiff's claims based on the cancellation of the Dao Xiang Cun Mark for abandonment or fraud, (Defs.' Mem. 13–14), because, as discussed above, the Court does not grant summary judgment as to Defendants' counterclaims for abandonment or fraud, (*see supra* section II.c).

ii.   **Plaintiff's trademark counterfeiting claim**

Defendants argue that "if the Court should decline to cancel the registration on the grounds [of] abandonment or fraud, summary judgment is still proper as to Plaintiff's counterfeiting claim on the alternative ground[] that a cursory visual comparison shows that the

---

[17]  Plaintiff does not respond to Defendants' arguments regarding Plaintiff's claims separate from its arguments that it did not abandon the Dao Xiang Cun Mark or commit fraud on the USPTO.  (Pl.'s Opp'n 2–23.)

mark on Defendants' goods is not 'identical with, or substantially indistinguishable from' the [Dao Xiang Cun] Mark as a matter of law" because the Dao Xiang Cun Mark "is visibly aesthetically different from [the] mark on Defendant[s'] goods, which is of different font and also contains a circular element and the phrase 'DAO XIANG CUN 1773.'" (Defs.' Mem. 22 n.8 (quoting 15 U.S.C. § 1127).)

Plaintiff argues that "[w]hether the minor differences in font, color or capitalization are sufficient to deem Defendants' use as not 'substantially indistinguishable' is a heavily disputed issue of material fact that must be determined by the jury, and as such, is not appropriate for summary judgment." (Pl.'s Opp'n 23 n.3.)

"Under the Lanham Act, '[a] counterfeit is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'" *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 95 (2d Cir. 2020) (alteration in original) (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013)); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 472 F. App'x 19, 22 (2d Cir. 2012) ("The Lanham Act defines as counterfeit 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'" (quoting 15 U.S.C. § 1127)). "To be a counterfeit, [an allegedly infringing] mark must both be substantially indistinguishable from the registered mark and be 'spurious' — that is, indistinguishable in such a way that the [allegedly infringing] mark 'trick[s] the consumer into believing he or she is getting' the product denoted by the registered mark." *Ill. Tool Works Inc. v. J-B Weld Co., LLC*, 469 F. Supp. 3d 4, 9 (D. Conn. 2020) (third alteration in original) (emphasis omitted) (quoting *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012)); *see also Fujifilm N. Am. Corp. v. PLR IP Holdings, LLC*, No. 17-CV-8796, 2019 WL 274967, at *3 (S.D.N.Y. Jan. 7, 2019) (concluding that counterfeiting occurs only when the substantially identical mark is "used to 'pass[] off' the infringer's product as the original, rather than merely presented in a manner

likely to confuse some consumers as to the origin or sponsorship of the infringer's product" (emphasis omitted) (quoting *Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, No. 12-CV-5423, 2015 WL 150756, at *2 (S.D.N.Y. Jan. 12, 2015))).  A court, when determining whether counterfeiting has occurred, is to examine the allegedly counterfeit product "from the standpoint of an average purchaser" and to compare the product "with the registered mark imprinted on actual merchandise."  *Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 526 (2d Cir. 1983).  "[T]o establish counterfeiting in the case of a word mark, it cannot be enough that one word used in the allegedly offending mark is the same, with no reference to font, color, typeface, or context."  *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 472 (S.D.N.Y. 2011), *aff'd sub nom. GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, 558 F. App'x 116 (2d Cir. 2014); *see also Kelly-Brown*, 717 F.3d at 314 (finding mark not counterfeit when "consumers . . . would recognize the differences . . . from a cursory visual inspection" based on different "font, color, and capitalization").

Although neither side fully briefed the merits of this argument,[18] the Court finds that there exists a genuine issue of material fact as to whether the Accused Mark is "substantially indistinguishable from" the Dao Xiang Cun Mark.  Upon a cursory visual inspection, the Accused Mark and the Dao Xiang Cun Mark have strikingly similar "font, color, and

---

[18]  The parties only brief this issue in a footnote.  (*See* Defs.' Mem. 22 n.8; Pl.'s Opp'n 23 n.3.)  While courts may decline to consider arguments raised only in footnotes, *see, e.g.*, *Manhattan Review LLC v. Yun*, 765 F. App'x 574, 578 (2d Cir. 2019) ("[T]he district court did not abuse its discretion in deeming waived [the plaintiffs'] argument, which appeared only in a footnote . . . ."); *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 314 (S.D.N.Y. 2015) ("[B]ecause the arguments appear only in footnotes, they are not properly raised, and the [c]ourt is under no obligation to consider them." (collecting cases)); *see also Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 814 n.44 (2d Cir. 2023) (finding that both parties waived arguments raised only in footnotes on appeal); *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review."), the Court addresses Defendants' argument.

capitalization" when viewed "from the standpoint of an average purchaser." *Snyder*, 718 F.2d at 526. The two marks are similar fonts,[19] non-italic, and are printed in solid colors, often black, white, or red. (*See, e.g.*, Image of Defendants' Actual Product ("Defs.' Actual Product Image"), annexed to Compl. as Ex. B, Docket Entry No. 1-3; Defs.' Product Catalog, annexed to Compl. as Ex. D, Docket Entry No. 1-3; Answer 11, 15–16); *cf. Kelly-Brown v. Winfrey*, No. 11-CV-7875, 2012 WL 701262, at *6 (S.D.N.Y. Mar. 6, 2012) (finding that the appearance of the trademarked phrase differed significantly as the plaintiffs depicted the phrase in all lowercase, non-italicized blue letters followed by a trademark and the defendants depicted a mix of capital and lowercase letters, italicized, in either white or black and pink, and printed in a noticeably different font), *aff'd in part, vacated in part*, 717 F.3d 295. In addition, the context in which Plaintiff and Defendants use the mark is substantially the same: the production of various foods, including noodles, biscuits, cereal-based snack food, and candy. (*See* Answer 11–12; Defs.' 56.1 Resp. ¶¶ 2–3, 17); *cf. Kelly-Brown*, 2012 WL 701262, at *6 (finding that the context in which the plaintiffs and the defendants used the trademarked phrase differed significantly as the plaintiffs used the phrase, *inter alia*, to sell "motivation communication services" including an annual "[r]etreat and other conferences" and the defendants used the phrase, *inter alia*, to sell a print magazine). Moreover, there exists a genuine issue of material fact as to whether the circular element and the phrase "Dao Xiang Cun 1773," significantly distinguish the two marks, given that only one image of Defendants' "actual merchandise" is available to the Court, *Snyder*, 718 F.2d at 526, which displays the phrase "Dao Xiang Cun 1773," (*see* Defs.' Actual Product Image), but Defendants' product catalog does not display the phrase on its merchandise, (*see*

---

[19] Although Defendants argue that their mark is "of different font," (Defs.' Mem. 22 n.8), they admitted in their Answer that the Dao Xiang Cun Mark and the Accused Mark are only "slightly different font[s]." (Answer 14 ("The '149 Registration confirms that the Chinese characters of the mark transliterate to 'dao xiang cun' — again, the corporate name of DXC Co., but in a slightly different font.").)

Defs.' Product Catalog).  Accordingly, the Court denies Defendants' motion for summary

judgment as to Plaintiff's trademark counterfeiting claim.

       **e.    The Court denies summary judgment as to Li's individual liability**

       Defendants argue that Li is entitled to summary judgment as to all of Plaintiff's claims as

having no individual liability because he is "a mere employee of [the California corporations]

with no decision-making authority."  (Defs.' Mem. 22.)  In support, Defendants argue that, to

find individual liability for infringement, Plaintiff must show that Li is a "moving, active,

conscious force" behind the California corporations' alleged infringement, which Defendants

argue has been interpreted to mean that the individual defendant "authorized or approved any

allegedly infringing action," *i.e.*, "that the individual had decision making power."  (*Id.* at 22–23

(emphasis omitted) (quoting *Steven Madden, Ltd. v. Jasmin Larian, LLC*, No. 18-CV-2043, 2019

WL 294767, at *4 (S.D.N.Y. Jan. 22, 2019)).)  Defendants argue that "Plaintiff can make no

showing that [Defendant] Li authorized and approved the acts of infringement that are the basis

for the [California corporation]'s liability;" rather "[a]ll of the evidence indisputably shows that

[Defendant] Li is merely an employee with no authority or decision-making power with respect

to the alleged infringing conduct."  (*Id.* at 23 (emphasis omitted).)

       Plaintiff argues that there exists a genuine dispute as to the material fact of Li's role and

responsibility within the corporate structure of the California corporations.  (Pl.'s Opp'n 23.)  In

support, Plaintiff argues Li testified that "among others, he is in charge of [the California

corporation's] marketing and sales team that frequently communicates with Dao Xiang Cun

Food Group for the sale of Dao Xiang Cun branded goods," and the fact that he was one among

others in charge and that he had a supervisor "does not preclude that he himself was in a

leadership position" within the California corporations.  (*Id.* at 24.)  In addition, Plaintiff argues

that, "while Defendants contend that [Defendant] Li is not an officer of [the California

corporations], his responses in discovery were unusually evasive," as he, for example, responded to Plaintiff's request to describe his position at the California corporations by stating that "Defendant does not have a specific position or title." (*Id.* at 24–25.)

A corporate officer may be held personally liable for trademark infringement and unfair competition only if "the officer [is] a 'moving, active conscious force behind [the defendant corporation's] infringement.'" *Victorinox AG v. B&F Sys., Inc.*, 709 F. App'x 44, 50 n.6 (2d Cir. 2017), *as amended* (Oct. 4, 2017) (second alteration in original) (quoting *Lee Myles Auto Grp., LLC v. Fiorillo*, No. 10-CV-6267, 2010 WL 3466687, at *7 (S.D.N.Y. Aug. 25, 2010)); *Red Rock Sourcing LLC v. JGX LLC*, No. 21-CV-1054, 2024 WL 1243325, at *24 (S.D.N.Y. Mar. 22, 2024) (quoting *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 155 (E.D.N.Y. 2016)) (same). "A corporate officer is considered a moving, active, conscious force behind a company's infringement when the officer was either the sole shareholder and employee, and therefore must have approved of the infringing act, or a direct participant in the infringing activity." *Red Rock Sourcing*, 2024 WL 1243325, at *24 (quoting *Mayes v. Summit Ent. Corp.*, 287 F. Supp. 3d 200, 212 (E.D.N.Y. 2018)). "A showing that the officer 'authorized and approved the acts of unfair competition which are the basis of the corporation's liability is sufficient to subject the officer to personal liability.'" *Coty Inc. v. Cosmopolitan Cosms. Inc.*, No. 18-CV-11145, 2020 WL 106745, at *4 (S.D.N.Y. Jan. 9, 2020) (quoting *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 15-CV-6015, 2017 WL 112515, at *4 (E.D.N.Y. Jan. 11, 2017)).

The Court denies summary judgment as to all of Plaintiff's claims against Li because there exists a genuine dispute of material fact as to Li's role at the California corporations. Plaintiff cites Li's deposition testimony and declaration to argue that Li had "decision making power" within the California corporations and was "directly in charge of the [California

36

corporation's] marketing and sales team."[20]  (Pl.'s Opp'n 24–25.)  Although Li gave conflicting

deposition testimony about who was in charge of the marketing and sales team,[21] he admitted

that he is "in charge" of "[c]ontact[ing] the manufacturers and the selling and purchasing and

also contact[ing] the customers," (Li Dep. 16:11–20), including "routinely handl[ing] the

communication with [Defendants'] Chinese suppliers related to products [Defendants] carr[y],

including the supplier of the [Infringing Products]," (Li Decl. ¶¶ 2, 7), and had "[r]oughly about

ten" people reporting to him from the sales and marketing and import departments, (Li Dep.

34:11–35:12).  While the Court acknowledges that this evidence is "relatively thin," it finds that

a reasonable jury could conclude that Li was a "moving, active, conscious force behind" the

Defendants' infringing activities.[22]  *See Victorinox*, 709 F. App'x at 50 n.6; *Abbott Lab'ys v.*

*Adelphia Supply USA*, Nos. 15-CV-5826, 17-CV-6002, 2019 WL 5696148, at *18 (E.D.N.Y.

Sept. 30, 2019) (finding that, although the evidence of the individual defendant's participation in

the sale of the allegedly infringing product was "relatively thin," the plaintiff had "adduced

---

[20]  (Dep. of Yaotian Li ("Li Dep."), annexed to Huang Decl. as Ex. D, Docket Entry No. 58-4; Decl. of Yaotian Li ("Li Decl."), annexed to Huang Decl. as Ex. E, Docket Entry No. 58-5.)

[21]  (*Compare* Li Dep. 51:9–17 ("Q. Are you in charge of those marketing and sales person who did the communication with the DXC Co? . . .  A. Of course I'm in charge because this is very important brand products.  Other people also in charge.  I'm one of the people in charge."); *id.* at 44:8–45:16 ("Q. Did you meet any people for the promotion of marketing of the [Infringing Products] during those five trips?  A. Of course.  This is our companies products. Normally we would do it. . . .  Q. During these five trips how did you introduce yourself to [Defendants'] customers?  A. I'm a person in charge wanted to sell some products."), *with id.* at 24:6–11 (testifying that Mark Wu was "the person in charge of the marketing team for the [Infringing Products]").)

[22]  The Court cannot consider Plaintiff's assertion that, on information and belief, "Li is an important member or a majority owner of [the California corporations], for which he makes decisions and solicits potential employees," (Lin Decl. ¶ 31; *see also* Pl.'s Opp'n 24), because "[a]ffidavits submitted in opposition to summary judgment must 'be made on personal knowledge,' and that requirement is 'not satisfied by assertions made on information and belief,'" *Est. of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 677 n.4 (2d Cir. 2016) (first quoting Fed. R. Civ. P. 56(c)(4); and then quoting *Patterson v. City of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004)).

sufficient evidence to allow a reasonable jury to conclude that she was a moving, active, conscious force behind [the defendant]'s infringing activities," when she received a copy of every email received by the defendant's president, was copied on an email regarding unpaid invoices for the infringing products, and was actively involved in the defendant's operations, including management meetings); *Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 383 (S.D.N.Y. 2015) (denying summary judgment as to an individual defendant who was alleged "to have incorporated the [defendant] company in 2003 and to be an owner" and who purchased "one of the company's Internet domain names," despite the plaintiff "present[ing] no other evidence as to his active role," because "[t]here [was] a question of fact as to his involvement in the infringement" (citing *Eu Yan Sang Int'l Ltd. v. S & M Enter. (U.S.A.) Enter. Corp.*, No. 09-CV-4235, 2010 WL 3824129, at *3 (E.D.N.Y. Sept. 8, 2010))); *Johnson & Johnson & Lifescan, Inc. v. S. Pointe Wholesale, Inc.*, No. 08-CV-1297, 2014 WL 12558573, at *20 (E.D.N.Y. Apr. 4, 2014) (finding that undisputed evidence that the individual defendant "negotiated sales of [the infringing products]" and "actually purchased or sought to purchase product" demonstrated that she "personally participated in and/or had the right and ability to supervise, direct and control the infringing conduct and benefitted from it" (quoting *Microsoft Corp. v. AGA Sols., Inc.*, 589 F. Supp. 2d 195, 201 (E.D.N.Y. 2008))); *cf. Cartier v. Aaron Faber, Inc.*, 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007) (denying the plaintiff's motion for summary judgment on individual liability as to a defendant who testified that he had nothing to do with the sale of infringing products and that his co-owner acted without his approval, indicating that he did not have an active role in the infringing activities). Accordingly, the Court denies Defendants' motion for summary judgment as to all of Plaintiff's claims against Defendant Li.

### III.    Conclusion

For the foregoing reasons, the Court denies Defendants' motion for summary judgment.

Dated: July 8, 2024
       Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge