

One PPG Place, Suite 3300                                 Shane M. Rumbaugh

Pittsburgh, PA 15222                                        (412) 504-8145

Steptoe & Johnson PLLC              shane.rumbaugh@steptoe-johnson.com

Phone:  (412) 504-8010

http://www.steptoe-johnson.com

March 14, 2025

*__Via ECF__*

Hon. Peggy Kuo, U.S.M.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *__Northern Food I/E, Inc. v. OCM Globe Inc. et al.__* **(No. 1:21-cv-01813 MKB-PK)**

Dear Judge Kuo:

Plaintiff writes in response to Defendants' recent letters to the Court requesting further discovery on the topic of tainted evidence. ECF 86 and 87. Plaintiff will not belabor the points already made in its letter to the Court regarding Defendants' procurement of a false witness statement (ECF 85) but will take care to elucidate some of the most concerning aspects of Defendants' submissions.

First, with respect to Defendants' March 12, 2025 letter (ECF 86), Defendants make the preposterous statements that "[t]he fact that HZTT is not a [contract manufacturer] of DXC goods is not controversial" and that "everyone knows that fact to be true." Defendants' attempt to mislead the Court is belied by its own letter. Defendants acknowledge that Plaintiff's president has testified HZTT is a contract manufacturer for Plaintiff's goods bearing the DXC mark. To suggest to the Court that this fact is not in dispute is simply untrue.

However, even more telling is Defendants' own recounting of its inability to find a witness to support Defendants' fabricated narrative, which counsel admits was pre-drafted without any knowledge of a witness who would support the fabrication. Defendants' counsel describes five declaration templates which were simply customized based on different job functions (sales/marketing, finance, legal, management/executive, and operations). Eventually, those generic declaration templates were narrowed down to be used by a witness (1) in a position of management or (2) in a non-managerial position. *__Critically, Defendants admit that they were only able to obtain declarations from individuals who were not in a managerial position.__* If HZTT were not a contract manufacturer for Plaintiff and everyone knows that fact to be true, why were Defendants unable to obtain a declaration from a witness in a position of authority at HZTT (or any other contract manufacturer of Plaintiff)?

Defendants' own submission makes clear that Defendants had to improperly influence a low-level employee of HZTT in order to obtain a signature on a declaration containing Defendants' wish-list set of "facts." Defendants spend much of their March 12, 2025 letter suggesting that the

1

translation of Mr. Huang's recantation is untrustworthy, and submitted their own translations as Exhibits 9 and 10 (ECF 86-1, 86-2). Defendants argue that the translation submitted by Plaintiff "misleadingly suggest[s] a bribe" and further argue that "money was simply paid after singing [sic]." Shockingly, the translations submitted by Defendants confirm Plaintiff's understanding, stating "under the temptation of money, I signed a document whose content I didn't know" and "under the temptation of money, I signed a document without understanding its content." Contrary to Defendants' misleading arguments, even Defendants' own submitted translations are clear that Mr. Huang's testimony was elicited through the promise of payment (in other words, the dictionary definition of a bribe[1]). In sum, the Court need look no further than Defendants' own submissions at ECF 86 as well as its Exhibits 9 and 10 (ECF 86-1, 86-2) to support an award of sanctions.

Wildly, Defendants assert that, if Mr. Huang was bribed by Defendants, it shows that he is susceptible to bribery and thus the Court should allow Defendants to investigate whether Mr. Huang was bribed by Plaintiff to recant. Frankly, this position also shocks the conscience. Defendants brazenly ask the Court to shift the burden of their own malfeasance onto Plaintiff, with absolutely no legal or factual basis to do so. Their position is deplorable and should be rejected as such.

Unfortunately, Defendants have doubled down on their transparent efforts to deflect the Court's attention away from their own misconduct. Indeed, Defendants have now filed an additional letter on March 13, 2025 seeking to impose further discovery burdens on Plaintiff. ECF 87. Specifically, Defendants seek to (1) require Plaintiff to search for and produce native copies of over 100 documents previously produced; (2) take a third deposition of Plaintiff's president, Mr. Lin; and (3) reopen expert discovery. All of these requests are frivolous and seek only to harass Plaintiff, drive up the expense of litigation, and delay a decision on the merits of this case while Defendants continue to sell counterfeit products in U.S. commerce.

The absurdity of Defendants' requests is clear when placed in the context of the parties' respective claims and defenses and the history of this litigation. In short, Plaintiff is the owner of a long-standing, incontestable trademark registration for the 稻香村 mark at the USPTO (U.S. Reg. No. 3,344,149, registered on November 27, 2007) covering "candy, biscuits, cakes, cookies, cereal based snack food, wheat based snack food, oatmeals, sesame powder, noodles" in Class 30. The 稻香村 mark transliterates to DAO XIANG CUN, meaning "village of the fragrance of ripening rice." Plaintiff brought suit against Defendants claiming, among other things, counterfeit trademark infringement due to Defendants' importation and sale in the United States of food products bearing the infringing Chinese characters for DAO XIANG CUN. ECF 1.

Defendants have long attempted to skirt liability in this case by claiming Plaintiff has abandoned the 稻香村 mark through nonuse, and by claiming that Plaintiff has fabricated evidence of its use of the mark. ECF 35. Defendants face a steep burden of proof on its abandonment claim, which Plaintiff fully expects will fail. This Court has already denied Defendants' Motion for

---

[1] "money or favor given or promised in order to influence the judgment or conduct of a person in a position of trust; something that serves to induce or influence; to influence the judgment or conduct of (someone) with or as if with offers of money or favor; to induce or influence by or as if by bribery." https://www.merriam-webster.com/dictionary/bribe

Summary Judgment which was predicated in part on a claim of abandonment due to non-use. ECF 69. Indeed, Plaintiff's president will testify at trial consistent with his declaration, confirming that Plaintiff has used the 稻香村 mark in connection with candy, biscuits, cakes, cookies, cereal based snack food, wheat based snack food, oatmeals, sesame powder, and noodles since 1996 and has never abandoned the mark. ECF 56-3. These matters have already been subjected to a full period of fact discovery as well as expert discovery, and Judge Bulsara has already denied Defendants' previous attempt to reopen expert discovery "as if the case was being litigated anew." ECF 76.

In fact, Defendants are raising questions of authenticity and seeking further discovery on images that have been in their possession since at least as early as **May 26, 2021**. ECF 10. Defendants had a full period of fact discovery to explore these issues, and as acknowledged by Defendants own submission, Defendants have already taken full expert discovery on these issues as well. Plaintiff's elderly president has already been subjected to two multi-day depositions and has been on the record far beyond the usual 7 hours contemplated by Fed. R. Civ. P. 30 (d)(1) (most recently for 15 hours on the record just three months ago). Not only did fact discovery close in this case on August 29, 2022, but Defendants already certified the close of an additional limited fact discovery period two times (in a February 24, 2025 submission to the Court and at a hearing on March 6, 2025). ***Now, only after Plaintiff independently discovered that Defendants were soliciting false and paid-for witness testimony, Defendants attempt to introduce their own discovery dispute to divert attention and resources away from their own wrongdoing.***

Defendants fail to establish any cause (let alone good cause) for their suddenly raised late discovery requests. The only thing that has changed between the close of fact discovery and now is the revelation of Defendants' efforts to pay low-level employees to sign pre-drafted witness statements (at least one of whom has recanted the statement and admitted a lack of knowledge). This Court should not reopen fact and expert discovery to Defendants based solely on an image Defendants' counsel purports to have found on the internet, particularly when the authenticity of Plaintiff's evidence has already been thoroughly vetted through both fact and expert discovery.

Finally, Defendants minimize their request to depose the Plaintiff for the third time by making light of Plaintiff's concern that additional discovery would be "harassing."  ECF 86. However, Defendants' previous discovery conduct makes clear that even a limited discovery period will be abused. Most recently on December 4-5, 2025, counsel for Defendants needlessly subjected Plaintiff to a two-day, fifteen-hour deposition on a mere 97 pages of documents where Defendant repeatedly asked questions well beyond the scope of the limited discovery granted by Judge Bulsara. ECF 76.  Notably, in objecting to Defendants' line of questioning, counsel for Plaintiff repeatedly stated its willingness to contact the Court, but counsel for Defendants never did so:

1              Q. LIN

2        Q.   Mr. Lin, I'll ask you a

3   different question.  Are there any DXC

4   goods in which Northern Foods created the

5   recipe and then provided it to a

6   manufacturer to produce that product?

7            MR. RUMBAUGH:  Objection.  Same

8        objection for being outside the

9        scope.

10            MR. HUANG:  I'm referring to

11        the goods identified in Plaintiff's

12        Additional Evidence.

13            MR. RUMBAUGH:  I think -- the

14        goods in this case have not changed.

15        They're the ones identified in the

16        registration which we've been looking

17        at.  It's not tide to the 97 pages at

18        all.  I think maybe we should have a

19        conference with the judge.

20            MR. HUANG:  Are you instructing

21        Mr. Lin not to answer the question

22        about whether DXC -- whether any of

23        the DXC goods in the evidence -- I'm

24        sorry -- are you instructing your

25        client not to answer the question of

Page 44

1    A. From 2007 to 2017 we sold it.

2        MR. HUANG:  So I want to

3    confirm that Northern Foods does

4    not, will not answer whether this

5    product is being sold after 2017,

6    is that correct, that Northern

7    Foods will not answer that

8    question?

9        MR. RUMBAUGH:  If counsel

10   would like we can meet and confer

11   on this issue, and I'm also happy

12   to contact Judge Bulsara's office

13   on your request to ask questions

14   outside of the additional

15   documents.  Please let me know if

16   you would like us to do that.

17       THE WITNESS:  I don't need

18   to respond?

19       MR. RUMBAUGH:  No, I'm

20   waiting for counsel to let me

21   know.

Only after the Court was closed did counsel for Defendants raise the issue of allegedly altered images (which, of course, was far outside of the scope of the limited discovery period):

```
                                                              Page 114
1        product, I don't see how that --
2           Q. Mr. Lin, do you know where the
3        product image in page 112 came from?
4           A. I honestly don't know where this
5        product comes from, I don't recall.
6           Q. My question was about the image
7        on page 112, do you know where the
8        image came from?
9              MR. RUMBAUGH:  You continue
10          to ask questions in violation of
11          what we had agreed to for limited
12          discovery of what the Court had
13          ordered.  You saved this and the
14          other images until after the
15          Court was closed so I could not
16          contact them, this was also not
17          noticed in the deposition topic.
18              The witness had no duty to
19          be prepared on who took pictures
20          from his declaration from two
21          years ago, completely outside the
22          97 page of documents.  We have
23          been on the record for roughly 15
24          hours now for 10 exhibits and 97
25          pages of documents, that's
                                                              Page 115
1        because you keep asking questions
2        that are outside the scope of the
3        deposition, and you continue to
4        do so over my objection.
5           Q. Mr. Lin, you may answer the
6        question.
```

Defendants seek to reopen discovery for a third time, based only on the predicate that the Court is concurrently addressing the issue of Defendants' improperly procured witness statements. Defendants' seemingly endless cycle of trying to litigate this case anew needs to end. Imposing further discovery against the Plaintiff is unwarranted, wasteful, and harassing. Frankly, this case should be ready for trial -- but for Defendants' solicitation of false testimony. Plaintiff respectfully requests that the Court deny Defendants' requested relief, permit Plaintiff to take limited discovery on the fraudulent witness statements as outlined in ECF 85, and allow this case to proceed swiftly to trial.

We thank the Court for its consideration.

Respectfully submitted,

Shane M. Rumbaugh
*Counsel for Plaintiff*

cc:    Counsel of Record (via ECF)